UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH GRIMES,<br>    Plaintiff,<br>    v.<br>JOHN DUNLAP, et al.,<br>    Defendants. | Case No. 16-cv-01488-WHO (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Dkt. Nos. 61, 78, and 79 |

## INTRODUCTION

Plaintiff Joseph Grimes alleges in this 42 U.S.C. § 1983 suit that defendants inflicted cruel and unusual punishment and violated his disability rights by denying him gloves to wear when he operated his wheelchair. Defendants move for summary judgment. Grimes failed to meet the California Probate Code's requirements to sue the estate of one defendant (Chisum); he sued her supervisor (Dunlap), who never treated Grimes nor supervised his case; and there is no evidence of discrimination based on his treatment. Nor does the record show deliberate indifference. For these reasons, defendants' motion for summary judgment is GRANTED.

## BACKGROUND

This suit arises from the asserted denial of replacement wheelchair gloves by staff at Salinas Valley State Prison to Grimes.[1] Grimes is morbidly obese, uses a wheelchair, and was classified as DPO, which "designates inmates who do not require a wheelchair full time, but are medically prescribed a wheelchair for use outside of the assigned cell."

---

[1] The factual allegations in this section of the Order are undisputed unless noted otherwise.

(Mot. for Summ. J. (MSJ), Dkt. No. 61 at 10.) Grimes suffers from other maladies: hypertension, degenerative disc disease of the lumbar spine, schizophrenia, antisocial personality, gastroesophageal reflux disease and a history of poly substance abuse, and diabetes mellitus type-2. (*Id.* at 11.) His doctors prescribed many medications for these conditions, including pain pills. (*Id.*)

A summary of Grimes's relevant medical history and treatment follows.

**May 23, 2012**: Dr. Moon examined Grimes at Corcoran State Prison in response to his complaints of back pain, walking difficulty, and a fall that had occurred a month prior. Grimes was morbidly obese at 311 pounds. Moon referred him to physical therapy, prescribed pain medication, and revised his "comprehensive chrono" to include the grant of a wheelchair. Other medical equipment was prescribed, but not gloves, which were not requested. A disability placement program verification form was also completed. Moon designated Grimes as an "intermittent wheelchair user, or DPO," which "designates inmates who do not require a wheelchair full time but are medically prescribed a wheelchair for use outside of the assigned cell." (MSJ, Feinberg Decl., Dkt. No. 61-7 at 4, 5.)

**September 26, 2012, October 8, 2012, October 16, 2012, May 29, 2013, and June 11, 2013**: At medical appointments on these dates, Grimes did not request wheelchair gloves nor did he complain of hand calluses or pain. (*Id.* at 5-6.)

**January 24, 2014**: Dr. Hamkar saw Grimes in response to his complaint of a callus on his left foot, which Hamkar then shaved off. There were no complaints about hand calluses or "any physical problems attributable to a lack of wheelchair gloves." (*Id.* at 6.)

By this time, Grimes had used a wheelchair for about a year and a half (May 23, 2012-January 24, 2014). During this time, he never requested gloves, nor complained of hand calluses or pain, nor complained about a lack of gloves.

**March 5, 2014**: Dr. Bourne saw Grimes regarding a grievance in which he requested morphine for chronic pain, an egg-crate mattress, a wheelchair cushion, wheelchair gloves, a back brace, and a wedge pillow. Morphine, the mattress, and the

2

1  back brace were denied; the rest were granted. Bourne "prescribed wheelchair gloves for
2  Grimes's additional comfort and convenience," not because they were "medically
3  necessary." There were no complaints of hand pain or calluses, and Bourne noted no
4  calluses. (MSJ, Bourne Decl., Dkt. No. 61-1 at 3.) *Grimes received his wheelchair gloves*
5  *on March 18, 2014 but lost them the same day.* (*Id.*)

Before March 2014, Grimes "never had a chrono for wheelchair gloves and never received wheelchair gloves." There is also no notation that before March 2014 that Grimes complained of hand calluses or pain, even though he had used a wheelchair for well over a year. (*Id.*, Feinberg Decl., Dkt. No. 61-7 at 7.)

**March 8, 2014**: Grimes filed a health care services request in which he stated "I am feeling pain like a hundred needle[s] sticking me all the times [*sic*] [in my] legs, arms and hands." The nurse's response notes that the patient has a history of lower back pain and a "family history of diabetes," which is likely the cause of ("c/o") the "feeling of pins and needles." (*Id.*, Feinberg Decl., Dkt. No. 61-9 at 32.)

**April 16, 2014, May 20, 2014, and June 5, 2014**: Grimes did not complain about hand calluses or pain, or his lost gloves, during the examinations on these dates. (*Id.*, Feinberg Decl., Dkt. No. 61-7 at 7.)

**June 6, 2014**: For the first time, Grimes complained in person about having hand calluses, but he did not mention any pain. The examiner, Dr. Bourne, "made a notation of hand calluses and new wheelchair gloves, [b]ut during the examination I did not document hand calluses." Bourne did note foot calluses, however. He prepared a comprehensive chrono which contained a prescription for wheelchair gloves for six months. The gloves were prescribed for "additional comfort and convenience," not because they were medically necessary. (*Id.*, Bourne Decl., Dkt. No. 61-1 at 3.) This was the first notation of hand calluses and wheelchair gloves in Grimes's medical record. (*Id.*, Feinberg Decl., Dkt. No. 61-7 at 7-8.) There had been no prior complaint about either. (*Id.* at 8.)

Grimes filed a grievance on this date against "state worker Kathy medical supply." (Am. Compl., Dkt. No. 28-2 at 33.)

3

**June 9, 2014**: Three months after losing his gloves, Grimes submitted a health care services request in which he complained of hand pain. He told a nurse the pain was caused by calluses, which had been caused by a lack of gloves. The nurse noted "small calluses near left and right thumb," and "middle and index fingers." (MSJ, Feinberg Decl., Dkt. No. 61-7 at 8.)

**June 15, 2014**: Grimes filed another request, this one to see a nurse about pain. He was seen the next day. He asked for gloves and was told a new approved chrono had been sent to the medical supply department. Calluses were noted by staff. (*Id.*)

**June 20, 2014**: Grimes met with Dr. Bourne because he had been refusing his diabetes medications. There were no complaints of hand calluses or pain. (*Id.*, Bourne Decl., Dkt. No. 61-1 at 4.)

**June 25, 2014**: Dr. Bourne saw Grimes regarding a grievance related to a prison transfer. There were no complaints of hand calluses or related pain. (*Id.*) However, that same day Grimes requested an appointment regarding his hand calluses. (*Id.*, Feinberg Decl., Dkt. No. 61-7 at 8.)

**June 28, 2014**: Grimes was seen by a nurse regarding his June 25th request, which involved "unwanted calluses that cause pain." The "onset" of the condition was said to be four years. An examination showed "multiple peasized hard masses in both hands." In the comments section, a nurse noted that "Inmate/Patient wanted to have a new pair of gloves. He has chrono for it. Claims to have lost his gloves." (*Id.* at 8-9.)

**June 29, 2014**: Grimes asked for an appointment regarding "painful calluses" and to contact the medical supplies department. Grimes said he hadn't received the new wheelchair gloves. The examining nurse noted that "patient denies any pain right now, but just wants to know what's going on with his wheelchair gloves." (*Id.* at 9)

**August 4, 2014**: Grimes met with a doctor, Do-Williams, and discussed various health matters. He did not complain about hand calluses or pain or a lack of gloves. (*Id.*)

**August 6, 2014**: A nurse saw Grimes about a grievance he had filed. Grimes pointed to calluses on his thumbs. He was told that "per HCM/CMO wheelchair gloves

are not a medical necessity. Only one pair per year will be issued. You may request gloves [on] March 2015 based on when you were last issued gloves." (*Id.*)

**September 3, 2014**: Dr. Birdsong saw Grimes regarding his health conditions, but nothing was said about hand calluses, pain, or a lack of gloves. (*Id.*)

**September 12, 2014**: Dr. Do-Williams saw Grimes about various medical concerns. There were no complaints about hand calluses, hand pain, or lack of wheelchair gloves. (*Id.*)

**September 15, 2014**: Another appointment with Dr. Do-Williams. No complaints about hand calluses, pain, or a lack of gloves. (*Id.*)

**September 19, 2014**: Another appointment with Dr. Do-Williams. Several matters were discussed but there were no complaints about hand calluses, pain, or a lack of gloves. (*Id.*)

**October 8, 2014**: Another appointment with Dr. Do-Williams. The notes state that "the patient was added onto today's visit as the patient had filed a complaint with the prison law office stating that he has developed painful calluses in the palms of his hands that make it difficult for him to access prison program services and activities." "The patient states that his wheelchair gloves had been lost after physical therapy in March 2014 and has been requesting to have his gloves dispensed to him but custody refused that."

An exam showed that there were multiple calluses on both hands, but none had signs of skin breakdown, bleeding, or tenderness. Grimes asked for gloves, which Williams ordered for him. Grimes was instructed to "be responsible for his property" and that staff "will not continue to issue him gloves on an as-needed basis." He was also told that after he receives his new gloves, replacements will not be given unless he can show that his current gloves are worn-out. (*Id.* at 9-10.) [2]

---

[2] According to a letter from defendant Dunlap that Grimes included in his exhibits, Grimes may have received new gloves as early as October 10, 2014. (*Id.* at 40.) Grimes asserts that he received a pair in November 2014. (Opp., Dkt. No. 69 at 4-5.)

**October 29, 2014**: Dr. Do-Williams saw Grimes regarding a grievance in which he requested his chrono be updated for all his medical appliances. Grimes complained about painful calluses on his feet, he did not mention any hand calluses or associated pain. (*Id.* at 10.)

**November 2, 2014**: Grimes submitted a health care services request in which he complained about an eight-month delay in receiving gloves. He said the lack of gloves caused his hands to hurt severely and caused pain to run up his arms. An examination on November 6, 2014, showed nothing remarkable. (*Id.*)

**November 10, 2014**: Grimes was seen by Dr. Do-Williams as a follow-up to prior complaints about chest pain. Do-Williams and Grimes discussed the chest pain and other matters, but Grimes did not complain of hand calluses and pain. (*Id.*)

**November 26, 2014**: Dr. Do-Williams saw Grimes regarding his numerous maladies. Grimes said nothing about hand calluses or hand or arm pain. He did say that sometimes he experiences "a tingling sensation in both of his hands when he is using the wheelchair to wheel himself." Do-Williams reasoned that the "ulnar neuropathy was likely from patient's body habitus and wheeling the wheelchair." The doctor encouraged Grimes to lose weight and to start to use a walker rather than a wheelchair. (*Id.* at 10-11.)

## PROCEDURAL BACKGROUND

Grimes filed this 42 U.S.C. § 1983 suit in March 2016. He named one defendant, Kathy Chisum. Chisum died five months later, in August 2016. (Suggestion of Death, Dkt. No. 16.) Her death significantly affected this litigation. I informed Grimes that his claims against Chisum could not survive unless he complied with state probate requirements. (Order Vacating Briefing Schedule, Dkt. No. 21.) He was given thorough instructions on how to comply with these requirements and I stayed the suit to provide Grimes with time. (Dkt. Nos. 21 and 25.) However, Grimes insisted on pursuing his federal suit even though he never complied with state requirements. (Dkt. No. 27.) Therefore, after the stay was dissolved, I dismissed Chisum as a defendant. (Order of Service, Dkt. No. 32.)

Grimes filed an amended complaint, naming as defendants John Dunlap, the Chief Medical Officer of Salinas Valley State Prison and Chisum's alleged supervisor, and Salinas Valley State Prison along with the warden William Muniz as the representative of the institution. (*Id.*) I found the Eighth Amendment claims against Dunlap cognizable. (*Id.*) The ADA (American With Disabilities Act) claims against Dunlap were not cognizable because Title II provides redress for discrimination by a "public entity," a term which does not include individuals. *See* 42 U.S.C. §§ 12131(1), 12132. The ADA claims against Salinas Valley were found cognizable. (*Id.*)

Defendants filed a motion for summary judgment. (Dkt. No. 61.) Before Grimes filed an opposition, I terminated defendants' motion and sent the parties to the Hon. Robert Illman for purposes of settlement. (Dkt. No. 67.) The case did not settle. I then reinstated defendants' motion and directed Grimes to file an opposition. (Dkt. No. 77.) He did not file one. I will, however, regard the "Exhibits of Concise Statement" he filed before thesettlement proceedings concluded as an opposition. (Dkt. No. 69.)

Presently before me are defendants' reinstated motion for summary judgment; Grimes's motion to serve Jim Chisum, the representative of Kathy Chisum's estate; and his motion for a calendar of the undersigned's hearing dates. (Dkt. Nos. 61, 78, and 79.)

Defendants' motion for summary judgment is GRANTED and Grimes's motions are DENIED.

**STANDARD OF REVIEW**

**I.      Summary Judgment**

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying

7

those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

## II. Deliberate Indifference

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (equating the standard with that of criminal recklessness). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* Consequently, in order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. *McGuckin v. Smith*, 974 F.2d 1050,

8

1060 (9th Cir. 1992), overruled on other grounds, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

The Supreme Court has further clarified this standard by holding that "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). A mere accident or evaluative mistake is not to be characterized as wanton infliction of unnecessary pain. *Estelle*, 429 U.S. at 105.

A plaintiff must show that his doctors or nurses embarked on a course of "medically unacceptable" treatment in "conscious disregard of an excessive risk to [his] health." *Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004). A claim of mere negligence related to medical problems, or a difference of opinion between a prisoner patient and a medical doctor, is not enough to make out a violation of the Eighth Amendment. *Id.*; *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

## DISCUSSION

### I. Defendants

The defendants in this case are or were Kathy Chisum, the Materials and Stores Supervisor at Salinas Valley during the relevant time period; John Dunlap, the Chief Medical Officer of Salinas Valley State Prison and Chisum's supervisor; and Salinas Valley State Prison (along with the warden as the representative of the institution). I will explain why summary judgment is appropriate for each defendant in order.

#### A. Chisum

When this action was filed, Kathy Chisum was the only named defendant.[3] Her denial of gloves for Grimes is the event that gave rise to this suit. Her death during the pendency of this suit (Suggestion of Death, Dkt. No. 16) complicated Grimes's ability to obtain damages; simply put, Grimes had to comply with state probate requirements before his federal suit against her could continue. "The law of the forum state determines whether

---

[3] Grimes had listed Does 1-5 as additional defendants, but they were dismissed at screening. (Dkt. No. 7 at 3.)

9

a section 1983 action survives or is extinguished upon the death of a party." *See* 42 U.S.C. § 1988(a); *Robertson v. Wegmann*, 436 U.S. 584, 592-95 (1978).

Grimes now wishes to serve Chisum's husband, Jim Chisum, who is alleged to be the representative of her estate. (Dkt. No. 78.) I gave Grimes thorough instructions on how to comply with state probate requirements to continue this action against Chisum. (Dkt. No. 21.) I told him that he, not the Court, was responsible for complying with state law. I stayed the action in order to give Grimes sufficient time to do so. (Dkt. No. 25.)

Grimes admits that he did not meet the state's probate requirements. (Dkt. No. 73 at 2.) However, he insisted on pursuing his federal suit. (Dkt. No. 27.) After I dissolved the stay, I dismissed Chisum as a party because Grimes had not complied with state probate requirements. (Dkt. No. 32 at 3.) Because Grimes never met state probate requirements, his motion to serve Jim Chisum is DENIED. (Dkt. No. 78.)

### B. Dunlap

Dunlap, Chisum's alleged supervisor, was named as a defendant after Chisum was dismissed. (Order of Service, Dkt. No. 32.) In the amended complaint, Grimes alleges that he requested a medical accommodation but "Kathy Chisum's boss, CMO Dunlap, said the gloves were not a medical necessity because defendant Chisum told her [*sic*] that plaintiff Grimes had received multiple pairs of gloves." (Am. Compl., Dkt. No. 28-2 at 5.) Grimes cites Exhibit B of his amended complaint as the basis for his allegation that Dunlap was somehow responsible for Chisum's denial of the gloves. But a review of that exhibits shows nothing that would link Dunlap to the denial. Grimes also alleges Dunlap "knew or should have known, about a substantial risk of injury," (*id.* at 17), and that as supervisor Dunlap "was aware of the goings-on between plaintiff and Chisum," (*id.* at 16.) He also appears to say that Dunlap was misled by Chisum's assertion that plaintiff had received multiple pairs of gloves: "because defendant Chisum told her [*sic*] that plaintiff Grimes had received multiple pairs of gloves."

Dunlap declares that he never treated Grimes nor was directly responsible for his care. He met Grimes one time (in December 2014) regarding a health care appeal. (MSJ,

10

Dunlap Decl., Dkt. No. 61-3 at 3.) Dunlap submitted unrebutted evidence that he (i) "was not Decedent Chisum's direct supervisor" and (ii) "was not consulted before any request [by Grimes to Chisum for gloves] was granted or denied during the alleged time period." (*Id.* at 5.)

Defendants have also submitted undisputed medical evidence that calluses could not cause the severe pain Grimes claims he experienced. "Calluses, on their own, do not cause significant pain that affects the arm." (*Id.* at 6.) In fact, calluses "are not known as harmful skin conditions and are medically insignificant." (*Id.*, Feinberg Decl., Dkt. No. 61-7 at 4.) Grimes complained in March 2014 that he suffered severe pain that would "shoot up and down his arms," but the nurse noted that that pain was likely caused by his diabetes.[4] Grimes has not submitted any competent medical evidence to dispute defendants' expert medical evidence.

Summary judgment will be granted because there is no genuine dispute of material fact. Grimes has not established any liability on the part of Dunlap. The exhibits Grimes cites as his basis for blaming Dunlap contain nothing to support the allegations. If his claim is based on Dunlap's role as supervisor, there is no respondeat superior liability under section 1983. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Furthermore, defendants have submitted undisputed evidence that Dunlap (i) "was not Decedent Chisum's direct supervisor" and (ii) "was not consulted before any request [by Grimes to Chisum for gloves] was granted or denied during the alleged time period." (MSJ, Dunlap Decl., Dkt. No. 61-3 at 5.) And even there was a material disputed fact on liability, Grimes's allegations amount at most to an allegation of negligence or gross negligence, neither of which is actionable under § 1983. *Toguchi*, 391 F.3d at 1058-60.

In sum, the undisputed record shows that at no time did any defendant know that

---

[4] The pain could also have been caused by Grimes's degenerative disc disease of the lumbar spine, a condition likely worsened by either an injury he suffered when he was in a chain gang, or an injury he suffered when he fell off a toilet he had been standing on, or by both. He often complained of back pain. (MSJ, Feinberg Decl., Dkt. No. 61-9 at 14, 16, 34.)

11

Grimes faced a substantial risk of serious harm. There is nothing to show that any prison official was aware of facts from which he or she could draw an inference that Grimes faced a substantial risk of serious harm. Nor is there anything to show that any defendant drew such an inference. *Farmer v. Brennan*, 511 U.S. 825 (prison official must be aware of facts from which an inference can be drawn and must draw the inference). Defendants have submitted undisputed expert medical evidence that calluses could not have caused the pain of which Grimes complains. He used a wheelchair for a year and a half without suffering from pain or calluses. It was only after his gloves were lost and not replaced that his complaints of calluses and pain arose. He was repeatedly examined. During these many appointments, he seldom complained about calluses or hand pain, and his calluses were never noted to be tender or that the skin was broken or bleeding.

Grimes alleges that he "developed blisters, callusses [*sic*], sores, and sharp pains shooting up the inside [of] both arms in to [*sic*] my shoulders causing me severe pain" and cites to Exhibit B as support. (Am. Compl., Dkt. No. 28-2 at 11.) But nothing in Exhibit B supports these assertions. In these health care requests and complaints, there is no description of sores or blisters or that the skin was broken or bleeding — in short, that they might have presented a serious medical condition. Because such facts were not noted in the medical reports, Dunlap would not have been aware of any such conditions or the possibility of any risk.[5]

Even when plaintiff's facts are taken as true, they do not support an allegation that any defendant embarked on a course of "medically unacceptable" treatment in "conscious disregard of an excessive risk to [his] health." *Toguchi*, 391 F.3d at 1058-60. Defendants' motion for summary judgment is GRANTED in favor of all defendants as to all Eighth

---

[5] Grimes's complaints about a lack of gloves causing calluses and pain did reach Dunlap through a letter dated October 7, 2014 sent on Grimes's behalf by the Prison Law Office. In his October 13 response, Dunlap informed the PLO that Grimes had received replacement gloves on October 10, 2014. (Opp., Dkt. No. 40-42.) Grimes did also submit many requests to be interviewed by the "C.M.O. of S.V.S.P" regarding wheelchair gloves, but in none of them does he state any facts indicating that his calluses presented any medical risk. Most of them are nothing more than complaints that he has not received replacement gloves. (Opp., Dkt. No. 69 at 84-96.)

12

Amendment claims.

### C. Salinas Valley State Prison

Defendants move for summary judgment on Grimes's ADA claims. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II of the ADA, a plaintiff must allege four elements: (i) he is an individual with a disability; (ii) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (iii) he was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (iv) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

Summary judgment will be granted in favor of defendants. The undisputed record shows that Grimes was not denied gloves because of his disability. Rather, he was denied gloves because he lost the pair he had been given.

Defendants' motion for summary judgment regarding the ADA claims is GRANTED in favor of all defendants.

### D. Qualified Immunity

Defendant Dunlap contends he is entitled to qualified immunity. The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful. *See Pearson v. Callahan*, 555 U.S. 223, 235–36 (2009). "If no constitutional right would have been violated were the allegations established, there is no

13

1 necessity for further inquiries concerning qualified immunity." *Id.* at 201.

2      Defendant Dunlap is entitled to qualified immunity. As noted in detail above, undisputed medical evidence shows that Grimes's calluses could not have caused the pain he describes. It also shows that Grimes's calluses were never noted in the medical reports as tender or showed signs of broken skin or bleeding. Because such conditions were not noted in the medical reports, Dunlap would not have been aware of any risk to Grimes. He was never his treating physician, nor did he even meet him until well after the events at issue here occurred. Therefore, Dunlap is entitled to summary judgment on the additional basis that he is protected by qualified immunity.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED. (Dkt. No. 61.) Grimes's motion to serve Jim Chisum, Kathy Chisum's husband, is DENIED. (Dkt. No. 78.) Grimes's motion for a calendar of hearing dates is DENIED. (Dkt. No. 79.)

The Clerk shall terminate all pending motions, enter judgment in favor of defendants, and close the file.

**IT IS SO ORDERED.**

**Dated:** September 23, 2019



WILLIAM H. ORRICK
United States District Judge